# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 24-1674V

| | |
|---|---|
| SANDRA JOHNSON,<br><br>　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 5, 2026 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA*, for Petitioner.

*Sarah Black Rifkin, U.S. Department of Justice, Washington, DC*, for Respondent.

### **FINDINGS OF FACT**[1]

On October 17, 2024, Sandra Johnson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 12, 2023. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent contends that Petitioner claimed that she received the vaccine in her left deltoid, but the vaccination record indicates it was administered in her right arm, and

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner had not addressed this inconsistency. Respondent's Rule 4(c) Report at *6 (ECF No. 13). Thereafter, Petitioner filed supplemental declarations intended to resolve the question (ECF No. 15). For the reasons set forth below, I find that more likely than not the flu vaccine was administered in Petitioner's left deltoid, as alleged.

### I.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y*

*of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.     Finding of Fact

I make the findings after a complete review of the record to include all medical records, testimonial evidence, Respondent's Rule 4 report, and additional evidence filed. Specifically, I highlight the following evidence:

- The vaccine administration record documents that Petitioner received a flu vaccine in her right arm on October 12, 2023. Ex. 1; Ex. 2 at 677. The vaccine was given during a hospitalization for weakness and fatigue. Ex. 2 at 671.

- Four days later (October 16, 2023), Petitioner saw Dr. Natalie Garcia Stratton via telehealth to follow up after her hospital stay. Ex. 1 at 370. The record does not mention shoulder pain.

- Eight days after vaccination (October 20, 2023), Petitioner had a telephone appointment with her surgeon, and again did not mention shoulder pain. Ex. 2 at 388.

- On October 22, 2023 (now ten days after vaccination), Petitioner messaged her primary care provider, stating that she had received a flu vaccine while hospitalized, and that "[a]s a result," her left[3] shoulder was in pain. Ex. 2 at 398. Petitioner was using heat, ice, and Tylenol and inquired whether the pain would go away or she had an injury from the vaccination. *Id*.

- The following day (October 23, 2023), Petitioner had a telephone appointment for left arm pain. Ex. 2 at 401. She reported that her arm was initially sore after

---

[3] The record states that "my *love* shoulder is in pain." Ex. 2 at 398 (emphasis added). Based on the context, and consistent with the record as a whole, I find that this is likely a typographical error, and was meant to refer to Petitioner's left shoulder.

vaccination, which had worsened and she now could not lift her arm. *Id*. She was advised that she likely had a localized skin reaction to the vaccine, and should take Benadryl and Tylenol and use warm compresses. *Id*. at 402.

- On December 2, 2023, Petitioner underwent a physical therapy evaluation for left shoulder pain. Ex. 2 at 431. She explained that she had received a flu vaccine while hospitalized, and now was having difficulty with left arm movement and pain. *Id*. at 432-33. The record documents the onset of her pain as October 12, 2023, and states that the mechanism of injury was "flu shot left arm." *Id*.

- On January 16, 2024, Petitioner saw a new primary care provider, complaining of left shoulder pain "from flu shot." Ex. 2 at 526-29. She was referred to an orthopedist. *Id*. at 530.

- On February 1, 2024, Petitioner saw an orthopedist complaining of "left shoulder discomfort since October 2023." Ex. 2 at 554. She related her pain to a flu vaccine received while she was hospitalized. *Id*.

- Petitioner filed a supplemental declaration addressing the discrepancy in her records. Ex. 5. She states that the vaccine was administered into her left shoulder, and that she recalls this clearly because she was hospitalized and "my right side was being used for an intravenous (IV) line and a blood transfusion, making it inaccessible for vaccine administration." *Id*. at ¶¶ 3, 4.

- Petitioner's husband, Derrick Johnson, submitted a declaration on her behalf. Ex. 6. He was present during her hospitalization, including when she received the vaccine. *Id*. at ¶¶ 3, 4. He states that he "observed the nurse prepare the injection and administer it directly into Sandra's left shoulder." *Id*. at ¶ 4. Her right arm was inaccessible at the time of injection due to an IV line and blood transfusion apparatus. *Id*. at ¶ 5.

- Brenda LaBar, Petitioner's sister, submitted testimonial evidence that she witnessed the vaccine being administered into Petitioner's left shoulder. Ex. 7 at ¶ 4. Ms. LaBar states that she was on Petitioner's left side and "was asked to move so the nurse could administer" the vaccine. *Id*. She adds that Petitioner's right arm was "occupied with an IV line and blood transfusion." *Id*.

- Carrie Lynn Lopez, Petitioner's best friend, submitted testimonial evidence that she was present when Petitioner received the vaccine. Ex. 8 at ¶ 4. Ms. Lopez recalls that Petitioner's right arm was "not accessible due to the location of medical equipment on that side of the bed." *Id*. Ms. Lopez adds that she is positive that the right shoulder was avoided, because she also avoids having vaccines administered in her right shoulder. *Id*. at ¶ 5.

The above medical evidence and witness statements preponderantly establish that Petitioner's October 12, 2023 vaccine was likely administered in her left shoulder. Although the vaccination record states that the vaccination situs was her right arm, *all* remaining evidence supports a left-side situs. Petitioner messaged her doctor just ten days after vaccination reporting *left* shoulder pain from vaccination. Thereafter, she consistently related her left shoulder pain to vaccination while seeking care from several health care providers. Petitioner also submitted declarations from multiple witnesses that consistently state that the vaccine was administered in her left shoulder, and persuasively explain that her right arm was being used for an IV and blood transfusion.

## Scheduling Order

**Respondent shall file, by no later than <u>Thursday, February 05, 2026</u>, a status report indicating whether he is willing to engage in tentative discussions regarding settlement or proffer, is opposed to negotiating, or has not yet determined his position. If Respondent wishes to file an amended Rule 4(c) Report, he should propose a deadline for it.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master